# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADAM LOCKLEAR, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-17-3829 |
| STEPHEN T. MOYER, *Secretary of Public Safety*, et al., | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Adam Locklear filed a civil rights Complaint on December 27, 2017. ECF No. 1. Based on the Complaint's allegations that Locklear was a target of gang violence, Att., ECF No. 1-1, the Court issued a show cause order, ECF No. 3. Locklear subsequently filed letters on April 26, 2018, June 4, 2018, and June 20, 2018 that the Court treated as requests for preliminary injunctions. ECF Nos. 11, 18, 21. The Court ordered Defendants to respond to each of these requests, ECF Nos. 13, 19, 27, and the Defendants have complied, ECF Nos. 16, 20, 27. Locklear submitted another letter on July 9, 2018, restating his allegations that his life is in danger. ECF No. 25. To date, the Court has denied injunctive relief as to the first and second show cause orders. *See* ECF No. 10, 22.

Now, having reviewed Locklear's allegations, I conclude that he has failed to demonstrate that he is in imminent danger and thus will deny the third and fourth requests for preliminary injunctions. Further, Locklear's filings are becoming increasingly speculative, placing an unnecessary burden on the Court's resources to review meritless requests for injunctive relief. Locklear is cautioned that the Court may impose limitations on future filings should this behavior persist.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy" that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Id.* at 20; *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). "A preliminary injunction cannot be issued unless all four of these elements are met, and '[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction.'" *Williams v. JP Morgan Chase Bank*, No. RDB-16-00312, 2016 WL 509426, at *3 (D. Md. Feb. 4, 2016) (slip op.) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation and quotation marks omitted)). "[T]he burden placed upon Plaintiffs to state a claim for a preliminary injunction is high." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 538 (D. Md. 2014); *see Fowler v. Wells Fargo Home Mortgage, Inc.*, No. GJH-15-1084, 2015 WL 2342377, at *2 (D. Md. May 13, 2015) (same). As particularly relevant to this case, the requirement that one establish a likelihood of suffering irreparable harm is not satisfied by suggesting a mere possibility of such harm. *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776, 799 (D. Md. 2015) ("The irreparable harm to be suffered must be neither remote nor speculative, but actual and imminent." (internal quotation marks omitted)).

## DISCUSSION

### I. Specific Allegations

Across all four filings, Locklear has made several particularized allegations of threats to his safety, each of which is separately discussed below. The Court concludes that Locklear has not established the four *Winter* factors—in particular, the likelihood of irreparable harm—as to any of these claims.

*a. Gang "hit"*

Locklear alleged repeatedly that a gang issued a "contract HIT" against him because he was formerly housed with a homosexual inmate and for other reasons. Compl. Att. 1; *see also* Apr. 26, 2018 Req. for Prelim. Inj. 1; July 9, 2018 Ltr. I already have denied injunctive relief as to this claim, Apr. 12, 2018 Order; June 25, 2018 Order, and I mention it here only for the purpose of fully cataloguing Locklear's allegations. Of all the allegations, this allegation perhaps came the closest to warranting injunctive relief, as it identified a specific, serious threat Locklear's safety and provided some detail to raise the threat above the speculative level.

Nonetheless, Defendants' sworn statements that Locklear would not be housed with or have contact with gang members established that this threat of harm was not likely to occur, even if it remained remotely possible. Indeed, as detailed below, Defendants have assigned Locklear a new cellmate on multiple occasions based on his complaints. Thus, Locklear was not entitled to preliminary injunctive relief as to this claim because he could not satisfy the second *Winter* factor.

*b. Isaac Smith*

Plaintiff alleged in his second request for a preliminary injunction that his life was in danger while Isaac Smith was his cellmate because Smith was "beefing with [B]loods." Apr. 26,

2018 Req. for Prelim. Inj. 1. As noted in the Order denying Plaintiff's second request for injunctive relief, Plaintiff was subsequently assigned a different cellmate. June 25, 2018 Order 3. Thus, this request was moot by the time the Court addressed it.

*c. Unknown Cellmate*

In his third request, Locklear alleged that, after he insisted he could not be housed with Smith, the correctional officers "put me in the cell with a known gang member. I don't know his name but he told me he was a gang member." June 4, 2018 Req. for Prelim Inj. 1. However, Plaintiff went on to state that he told the unnamed gang member about his "situation," and the gang member "was respectful and said the c/o's be trying to set people up to get hurt." *Id.* As with his claim regarding Isaac Smith, Locklear has acknowledged he has been given a different cellmate. June 20, 2018 Req. for Prelim. Inj. Therefore, this request is moot and will be denied accordingly.

*d. Officers Barnes and Hedrick*

Finally, in his third and fourth requests, Locklear alleged that Correctional Officers Barnes and Hedrick have physically assaulted him, used racial slurs toward him, and stated that they hoped his cellmate would kill him. June 4, 2018 Req. for Prelim. Inj.; June 20, 2018 Req. for Prelim. Inj. 2. Barnes and Hedrick have submitted affidavits denying the allegations that they have physically assaulted Locklear and told him that they "hope his cellmate kills him," ECF Nos. 20-6, 20-7,[1] and Locklear has not offered evidence or a sworn statement rebutting these affidavits. And, although Barnes's and Hedrick's affidavits do not address the allegation of racial slurs, such an allegation, while troubling and potentially actionable, fails to suggest the

---

[1] The institution's litigation coordinator has also submitted an affidavit dated June 20, 2018, stating that, during 2018, Locklear has not filed an administrative grievance or been involved in a use of force investigation or serious incident report. ECF No. 20-8.

4

requisite likelihood of irreparable harm necessary to warrant a preliminary injunction.

**II. Generic/Speculative Allegations**

Aside from these specific claims that nonetheless do not warrant injunctive relief, Locklear's filings are rife with generic, speculative claims of danger that suggest that Locklear can never be safe in any prison facility in the Western Region of Maryland. For example, Locklear claims that he is unsafe because gang members control the prison. *See* Apr. 26, 2018 Req. for Prelim. Inj. ("[P]rison is gang infested to the max and gangbangers run prison period . . . all our tier workers are gangbangers they feed us our food and do our laundry and they know exactly what cell we in cause staff puts our pictures on our doors"); June 20, 2018 Req. for Prelim. Inj. (claiming that "working men" who prepare his food could poison him and stating— without explaining how he knows this—that gang members "are putting stuff [in his] food"). Relatedly, Locklear claims that he could be stabbed while being escorted to showers because "gangbangers are roaming around freely," Apr. 26, 2018 Req. for Prelim. Inj., and that "if [he is] walking with handcuffs on and some [sic] tries to stab [him] the c/o's will just move out the way," June 4, 2018 Req. for Prelim. Inj. 2.

Locklear has failed to suggest that his fears are objectively reasonable and grounded in actual occurrences. For example, he does not allege that anyone at the prison ever has been poisoned via gang-member prepared meals, that he has ever become ill after eating gang-member prepared meals, or that anyone has threatened to attack him in this way. As to the statement that gang members are putting "stuff" into his food, Plaintiff does not describe what the "stuff" is or what effects, if any, he has suffered from the "stuff." Regarding the possibility of attack while walking to the showers, Plaintiff does not allege that any other inmate has tried to stab or otherwise assault him while he was being escorted in handcuffs, or threatened to do so. As pled,

these allegations are simply too speculative to justify the extraordinary relief of a preliminary injunction.

Unlike the claims regarding his food or safety when walking while handcuffed, which are speculative but perhaps made in good faith based on Locklear's genuine fears, Locklear also makes frivolous, sweeping generalizations that undercut his other allegations. Taken as a whole, these generalizations suggest that there simply are no conditions that could make him safe in prison since all inmates and correctional officers pose a danger to him. *See* Apr. 26, 2018 Req. for Prelim. Inj. ("[T]his gang contract to harm me will always be active amongst these environments."); June 4, 2018 Req. for Prelim. Inj. 1 ("[M]y life is in danger in this region with gangs and the c/o's."); *id.* at 2 ("[M]y life will always be in danger with inmate and c/o's."); June 20, 2018 Req. for Prelim. Inj. 1 ("[M]y life will always be in danger with the c/o's and inmates."). This reach of his allegations is perhaps best illustrated by his most recent letter to the Court, in which he states that his "life will always be in danger walking out of the cell or walking with the handcuffs on to go anywhere," and that his "life [is] in danger in the cell with anyone." July 9, 2018 Ltr.

### III. Going Forward

In his repeated requests for preliminary injunctions, Locklear has raised new allegations of wrongdoing and imminent harm. These claims now exceed the scope of this litigation, in which a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, now is pending. ECF No. 28. Therefore, each new incident or threat that Locklear wishes to bring before this Court shall be filed as a new lawsuit.

Locklear is cautioned that the *in forma pauperis* statute, under what is known as the "three strikes" rule, provides that a prisoner may not bring a civil action without complete

6

prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). While this underlying lawsuit still is pending and does not, at this time, warrant a "strike," Locklear's unsubstantiated requests for injunctive relief, on their own, likely would have warranted strikes.

Additionally, courts have held that the "imminent danger" exception to § 1915(g)'s "three strikes" rule must be construed narrowly and applied only "for genuine emergencies," where "time is pressing" and "a threat or prison condition is real and proximate," with "the potential consequence [a] 'serious physical injury.'" *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). Although not insurmountable, the bar for establishing imminent danger is high. *See id.*

> If limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once the beating is over the prisoner is no longer in "imminent danger" . . . . Reading the imminent-danger language this way would make it chimerical, a cruel joke on prisoners.

*Id.* Thus, should Locklear acquire three strikes by filing claims in seriatim that include only vague allegations that fail to state a claim, his speculative claims of imminent danger will not qualify for the exception to § 1915(g). *See id.*; *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (concluding that "conclusory assertions that defendants were trying to kill Martin by forcing him to work in extreme conditions despite his blood pressure condition" were "th[e] type of general assertion [that] is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury").

## CONCLUSION

Accordingly, the Court denies Locklear's third (ECF No. 18) and fourth (ECF No. 21) requests for injunctive relief. The Court cautions Locklear that he should not file further requests for injunctive relief absent specific details addressing each of the *Winter* factors detailed in this opinion, particularly the likelihood of imminent harm. Additionally, requests for injunctive relief stemming from new incidents must be filed as separate lawsuits. Failure to comply may result in the Court imposing limitations on future filings.

A separate order follows.

August 14, 2018
Date

Paul W. Grimm
United States District Judge