# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADAM LOCKLEAR, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-17-3829 |
| STEPHEN T. MOYER, *Secretary of Public Safety*, et al., | * | |
| | * | |
| Defendants | | |

***

## MEMORANDUM OPINION

Maryland inmate Adam Locklear filed a verified Complaint and verified Attachment in this civil rights action, alleging that he was physically assaulted and verbally harassed by correctional officers and housed in inadequate conditions at Western Correctional Institution. Compl., ECF No. 1; Att., ECF No. 1-1. He claims excessive force, harassment, and failure to protect him from assault, and he challenges his conditions of confinement. He named Stephen T. Moyer, Secretary of Public Safety; Warden of WCI Richard Graham, Jr.; Lieutenant James Smith; and Correctional Officers J. Weimer, G. Durst, T. Warmick, and C. Davis as Defendants.

Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 28, along with a Memorandum in Support, ECF No. 28-1, and Plaintiff filed correspondence that the Court will construe as an Opposition, ECF No. 31. The matter is now ripe for review. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). Because Locklear failed to exhaust all but his excessive force claims, and a genuine dispute of material facts exists regarding the amount of force used against him, Defendants' dispositive Motion, treated as a Motion for Summary Judgment, is DENIED as to the excessive force claims against Defendants G. Durst and C. Davis, and GRANTED as to the remaining claims and Defendants. The Court will appoint pro bono

counsel to represent Plaintiff on his excessive force claims.

**BACKGROUND**

Plaintiff was transferred to Western Correctional Institution in December 2016. He alleges that upon arrival, Lieutenant James Smith stated "Oh, Locklear, I been waiting on you, you better not throw no trays on us out here, they will kill you out here." Pl.'s Att. 1. Smith asserts that he did not make this statement. Smith Decl. 2, ECF No. 28-4.

Plaintiff reports that he spent his first four and half days at WCI in a "contensioncy cell," which was filthy and unsanitary. Pl.'s Att. 1. He states that the cell lacked a "bunk" and toilet paper, and that he was denied a shower, clean clothes, and his medication. *Id.* Smith asserts that Plaintiff was only housed on Staff Alert for two days; that Plaintiff was not denied showers, medication or access to medical care; and that "at no time was [Plaintiff] placed in a cell with urine, feces, mold, bugs, pepper spray, etc." Smith Decl.

After being released from the "contensioncy cell," Plaintiff states he was housed with a "known homosexual." Pl.'s Att. 1. Plaintiff claims that this housing assignment placed both his and his cellmate's "life in danger due to [Plaintiff's] affiliation" with the Crips. *Id.* Plaintiff claims that he later dropped his affiliation with the Crips and consequently has a "contract HIT on [his] head."[1] *Id.* He also claims that, while he was housed in the cell with a homosexual cellmate, other inmates threw "human waste, urine, spoiled milk, and dead mice" at him, and correctional officers (whom he does not identify by name) did not take any action to protect him or punish the offending

---

[1] Based on Plaintiff's claim of a "contract HIT," the Court issued a Show Cause Order to Defendants. ECF No. 3. Defendants submitted a response, supported by a declaration stating that Plaintiff was placed on administrative segregation pending investigation into his claims and that "[w]hile housed on administrative segregation, Mr. Locklear is separated from the general population. He will only come into contact with his cellmate who is not a verified gang member." Winters Decl., ECF No. 5-1; *see also* Resp., ECF No. 5. After considering Plaintiff's reply to Defendants' show cause response, ECF No. 8, the Court denied injunctive relief, ECF No. 10.

2

inmates. *Id.*

On March 9, 2017, Correctional Officers Durst, Warnick, Davis, and Weimer were involved in a search of Plaintiff's cell. *Id.* at 2. Plaintiff reports that during the search his property "was being willfully discarded" and that the officers were "breaking and ripping things." *Id.* After the search was complete, there was an altercation between Plaintiff and Defendant Durst during which Durst maced Plaintiff. The parties present competing versions of the altercation.

According to Plaintiff's sworn Complaint, after search ended, he "was let back in the cell still secured in handcuffs[.] Ofc. G. Durst COII pulled his mace can out and sprayed [him] with *the whole can*. They opened the cell door directing [him] to lay down, they picked [him] up by both arms and legs." *Id.* (emphasis added). Officers carried Plaintiff away from the cell to the medical department, where Plaintiff was evaluated by a registered nurse for mace exposure. *Id.* Plaintiff further alleges that, before being returned to his cell, he was "vigorously[] and physically assaulted by OFC. C. Davis." *Id.*

Durst issued a sworn Notice of Inmate Rule Violation (NOIRV) to Plaintiff following the incident, charging Plaintiff with using intimidating, coercive, or threatening language; interfering with or resisting the performance of staff duties to include a search of a person, item, area, or location; and disobeying an order.[2] NOIRV, ECF No. 28-3, at 18. In the NOIRV's Statement of

---

[2] In addition to the NOIRV, Defendants have provided documents connected to the investigation into the use of force, and a declaration from Defendant Smith detailing the incident second-hand. Incident Investigation & Report, ECF No. 28-3, at 8–16; Smith Decl., ECF No. 28-4. These documents provide a description of the event that is substantially similar to that provided in the NOIRV, however, the NOIRV is the only one that is authored by an individual who was on the scene (Durst). Neither Durst nor Davis has provided this Court with a declaration in response to Plaintiff's Complaint. Defendants have provided a video recording taken from the hallway outside Plaintiff's cell, but the video does not show the inside of the Plaintiff's cell during the deployment of the pepper spray; nor does it show Plaintiff's return to the cell after receiving medical treatment. Video, ECF No. 28-9.

3

Facts, Durst reported:

> At the completion of the cell search Locklear walked to the rear of the cell so that the cell door could be closed. I called for the cell door to be closed, via my radio. Before the control center Officer could get the cell door closed Inmate Locklear stepped through his handcuffs so they were in the front of him and charged aggressively towards the Officer's [sic] standing at the cell door. I applied *a burst* of pepper spray to the facial area of Inmate Locklear and ordered him to get on the cell floor, which he complied. Officers Davis, Warnick, Weimer, and I entered the cell and gave several direct orders to stand up and exit the cell, which he refused. Locklear was lifted off the cell floor with Officer Davis having his right arm, Officer Warnick had his left arm, Officer Weimer had a hold of his jumper above his shoulders, and I had control of both feet. Inmate Locklear was carried from the wing in a sitting position. Inmate Locklear was taken to the Housing Unit #4 Medical Room where he was treated by M. Klepitch RN for exposure to pepper spray. At the completion of his medical treatment Inmate Locklear was offered and accepted a shower. Inmate Locklear was returned to cell 4-A-8 at the completion of his shower with no further incident.

*Id.* (emphasis added).

In his brief unsworn Opposition, Plaintiff contends that the NOIRV was resolved in his favor and that the hearing officer who considered the NOIRV "said it doesn't take that many [correctional officers] to deal with someone and he still had handcuffs on[;] no ma[c]e should have been used." Pl.'s Opp'n. Plaintiff requests that Defendants be ordered to produce the documentation associated with the NOIRV hearing. *Id.*

Plaintiff asserts that the day after the March 9, 2017 incident, he was removed from his cell and placed in another "contensioncy cell/isolation cell[,] which once again was disgusting housing conditions," over a period of four days. Pl.'s Att. 2. Finally, Plaintiff reports that after being separated from his cellmate following the March 9, 2017 incident, he "refuse[d] cell mates for safety purposes because the correctional officials would house [him] with people they know wanted to harm [him]." *Id.* at 2-3.[3]

---

[3] Despite the fact that Plaintiff initiated this action in late December 2017, more than nine months after the March 9, 2017 incident, Plaintiff's Complaint did not include any specific details to

4

**STANDARD OF REVIEW**

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be

---

support the speculation that he would be housed with inmates who wanted to harm him. Starting in April 2018, Plaintiff submitted several letters to this Court complaining about particular cellmates and alleging generally that he was at risk of harm by other inmates because of the "gang contract to harm [him]." Pl.'s Apr. 26, 2018 Corresp., ECF No. 11; *see also* Pl.'s June 4, 2018 Corresp., ECF No. 18; Pl.'s June 20, 2018 Corresp., ECF No. 21. Each time, the Court issued a show cause order to Defendants, who timely responded. Orders, ECF Nos. 13, 19, 22; Defs.' Resp., ECF Nos. 16, 20, 27. Based on Defendants' responses and the increasingly broad and speculative nature of Plaintiff's allegations, *see, e.g.*, Pl.'s June 20, 2018 Corresp. 1 (speculating that inmates might poison his food and alleging that his "life will always be in danger at WCI"), the Court denied injunctive relief as to these arguments. As these allegations were not part of the original Complaint and have already been addressed by the Court, Orders, ECF Nos. 22, 30, they will not be addressed further in this Memorandum Opinion.

Likewise, the claim in Plaintiff's correspondence that he was assaulted and verbally harassed by two correctional officers in May 2018, *see* Pl.'s June 4, 2018 Corresp.; Pl.'s June 20, 2018 Corresp., will not be addressed as it was not part of the original Complaint. Further, it is not possible that Plaintiff exhausted his administrative remedies regarding this claim given Plaintiff's near-contemporaneous reporting of the incident to the Court. However, Plaintiff may raise this claim in a separate action if he desires to pursue it.

on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive Motion, the Motion shall be treated as one for summary judgment. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). I view the facts in the light most favorable to Plaintiff as the party opposing summary judgment. *See Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003); *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013).

## DISCUSSION

### I. Unexhausted Claims

Plaintiff asserts that he "used the prisoner grievance procedure available at the Western Correctional Institution (W.C.I.) to try and solve the problem. The Plaintiff has submitted numerous ARP's and complaints to Inmate Grievance Office (IGO) and have received nothing but dismiss [sic]." Compl. 3. He does not identify which claims he brought to the IGO. He attaches one Request for Administrative Remedy ("ARP") form, the first page of which is not legible. ECF

No. 1-2. On the pages that follow, he asserted that his "paperwork [was] destroyed now beyond Recognition," which "interferes[] with [his] Constitutional Right of access to the Courts," *id.* at 2, a claim that he does not raise in this litigation. He also made allegations against Officers Wakefield, Roby, and Wilburn, whom he has not named as Defendant. *Id.* at 2.

Defendants argue, *inter alia*, that for all claims except the claims of excessive force, Plaintiff has failed to exhaust his administrative remedies. Defs.' Mem. 10. In support of this argument, Defendants have provided a declaration from Samiyah Hassan, an Administrative Officer with the Inmate Grievance Office ("IGO"), stating that Plaintiff "has not filed any complaints or grievances with the IGO." Hassan Decl., ECF No. 28-8. Clearly, Locklear completed an ARP, although it is not evident on the copy he attached whether the IGO received it or what the outcome was.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'

. . . normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624-25 (D. Md. 2015) (internal citation omitted).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See id.* § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 *et seq*. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

Thus, for most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *Id.* at 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. *Id.* at 12.07.01.05C. If the appeal is denied, the prisoner then has 30 days to file a grievance with the IGO. *See* Corr. Servs. §§ 10-206, 10-210; COMAR 12.07.01.03 and 12.07.01.05B. The IGO then reviews the complaint and either dismisses it without a hearing, if it is "wholly lacking in merit on its face," or refers it

to an administrative law judge for a hearing.[4] Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08. The administrative law judge, in turn, may deny all relief or conclude that the inmate's complaint is wholly or partly meritorious, after which the Secretary of DPSCS must make a final agency determination within fifteen days of receipt of the proposed decision. *See* Corr. Servs. § 10-209(b)-(c).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The *Ross* Court explained that an administrative remedy is available for purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Exhaustion is also required even though the full relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when (1) the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so "opaque" as to become "practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination,

---

[4] If the Commissioner fails to respond, the grievant shall file his or her appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

misrepresentation, or intimidation." *Id.* at 1859-60.

Here, Defendants' exhibits demonstrate that Plaintiff did not exhaust administrative remedies as to his claims regarding the conditions of his confinement during the periods he spent in the isolation cell in December 2016 and March 2017, the officers' failure to protect him from assault at the hands of other inmates, or verbal harassment from the officers. Defendants assert—and Plaintiff does not dispute—that he failed to file any grievance with the IGO about these claims. Further, Plaintiff does not argue that administrative remedies were unavailable to him for any of the reasons identified by the *Ross* Court. Thus, I agree with Defendants that these claims must be rejected for failure to exhaust available administrative remedies.

## II. Excessive Force

Defendants specifically exclude Plaintiff's claims of excessive force from their exhaustion argument; therefore I will consider these claims on the merits. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). Consideration of a defendant's mental state is key to a constitutional claim, because "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Factors to consider in determining whether the force employed was excessive include: the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the

severity of the response. *Id.* at 321.

First, Plaintiff claims under oath that after being returned to his cell on March 9, 2017 upon the conclusion of the cell search, Defendant Durst "pulled his mace can out and sprayed me with *the whole can*," despite the fact that Plaintiff was still secured in handcuffs. Pl.'s Att. 2 (emphasis added); *see also* Compl. 5 (stating under penalty of perjury that Complaint and exhibits are true). In the sworn NOIRV, Durst alleges that after Plaintiff re-entered the cell he "stepped through his handcuffs so they were in front of him and charged aggressively towards the Officer's [sic] standing at the cell door," prompting Durst to deploy "*a burst* of pepper spray" to Plaintiff's face. NOIRV, ECF No. 28-3, at 18.

Although Plaintiff does not refute Durst's report that he stepped through his handcuffs and "charged aggressively," there is plainly a factual dispute over the amount of pepper spray that was used. Even if Plaintiff charged aggressively at the officers, a finder of fact could readily determine that the use of an entire can of pepper spray, as alleged by Plaintiff, was more than a reasonable quantity under the circumstances. *See Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) ("[I]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." (emphasis omitted)); *see also Rodgers v. Stallings*, CCB-12-3778, 2016 WL 852703, at *8 (D. Md. Mar. 4, 2016) (citing cases). Given the material dispute over the amount of pepper spray used, Durst is not entitled to summary judgment on this claim.

In his second excessive force claim, Plaintiff states that he was vigorously assaulted by Davis after being seen in the medical department for mace exposure but before being returned to his cell. Pl.'s Att. 2. Defendants do not offer any statements from Davis to refute this assertion—indeed, Defendants appear to misread Plaintiff's Complaint as alleging that Durst (rather than

11

Davis) committed this assault. *See* Defs.' Mem. 3, 18. Defendants' only evidence on this matter stems from Durst's NOIRV and later reports created in connection with the use of force report echoing Durst's NOIRV stating that Plaintiff was returned (by an unspecified officer) to his cell without incident. *See* Incident Investigation & Report, ECF No. 28-3, at 8, 11; NOIRV, ECF No. 28-3, at 18. Contrasting Plaintiff's sworn statement that Davis assaulted him with Defendants' misreading of Plaintiff's claim coupled with the fact that Defendants have not provided any evidence from any individual claiming to be involved with returning Plaintiff to his cell, it is clear that Davis is not entitled to summary judgment on this claim.

Finally, the Court notes that Defendants' conclusory assertion of entitlement to qualified immunity, Defs.' Mem. 10-12, is plainly without merit. As Defendants acknowledge, qualified immunity requires demonstrating that a defendant public official has not violated a clearly established right. *Id.* at 11 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Inmates' rights to be free from excessive use of mace and random officer assault are clearly established, as the above-detailed discussion demonstrates.

## CONCLUSION

For the foregoing reasons, Defendants' dispositive Motion, construed as a Motion for Summary Judgment is denied as to the excessive force claims against Defendants Durst and Davis, and is granted as to the remaining Defendants and claims. The Court will appoint pro bono counsel to represent Plaintiff on his excessive force claims. A separate Order follows.

February 19, 2019  /S/
Date  Paul W. Grimm
United States District Judge

12